Washington Parish, Dishman, Weedon, John & Wm. Brown Defts. In Ejectment
This Suit being brought to settle the Pits. Bounds with some of the Defts, And to try his Title with others There has been a Survey in the Country & a Trial at the Bar there The Jury have given a special Verdict Upon which the Case is In 1651. a Pat. was granted to Ann Bernard for 1000 A. of Land And in 1654. Another Pat. for 1500 A. including the 100 A. Under which the Pit. claims Ann Bernard died seised & the Premes descended to her Son R’d Bernard who died in 1691. having by his Will devised the same to his Sons Philip & John John had the whole by Survivorship & died in 1709. having by his Will devised to his Son the Lessor of the Pit. who is also his Heir & was 25 Years old when this Suit was brought.
In 1689. John Bernard the Grandfa’r who lived in Glouc’r
Richard? (different hand) W. W. S,
made a Letter of Atto. to William Buckner to sell Part of this Land And in 1691. Buckner for a small Cons, takes upon him to sell two Parcels to Tho’s Weedon & Alex’r Shairs Under whom the Defts. Dishman & Weedon claim These Deeds are made in the the Name of Buckner himself & not in the Name of Bernard who indeed was dead before the Date of them Dish-man & Weedon have been in quiet Possion from the making of these Deeds to the bringing of this Suit And died seised before the Suit was brought in the Life time of the Pits. Father There is no Title at all for the other Defts. Except w’t they can derive from Possion proved by sev’l Depcons which are found by the Jury tog’r with the Survey’rs & Jurys Report in the Country *B273 And the Jury further find that the black Lines in the Surveyor’s Plat are the true Bounds of the Pits. Pat.
The Bounds being thus settled the Court will not I presume suffer that Matter to be brought again into Dispute The Points then arising upon this Verd’t are 3. 1. Whether the Defts. Dishman & Weedon have a good Title under the Deeds from Buckner If not Then 2. Whether the Grantees in those Deeds dying seised in the Life of the Pits. Father will avail any Thing 3. Whether the Possion of any of the Defts. will give them a Title or bar the Pit. from bringing this Suit
I shall begin with the Title of Dishman & Weedon And I conceive the Deed from Buckner as Attorney of our Grandfa’r is void for 2 Reasons 1. Because it is not made in the Name of the Principal but of the Attorney himself 2. Because the Principal was dead before the Deed was made And consequently the Attorneys Power determined Co. Lit. 52. a. b. [255] As to the 1. It is a known & settled Rule that when a Man has Authority given him as Attorney of another to do an Act he must do it in the Name of the pson who gives the Authority for the Attorney is in the Place & represents the pson of his Principal Co. 9. 76. b. Combs Case. This is proved by the gen’l Form of Letters of Attorney which runs as indeed the Letter of Attorney in this Case does For me & in my Name to make seal &c. But there are besides sev’l adjudged Cases in Point
Q. if not good either way Vid. 1. Sal. 96.
The King by Lres Pat. gave Authority to his Surv’r to make Leases The Surv’r causes a Lease to be made betw. the King of the one Part & I. S. of the other Part Concluding In Testimony whereof the sd. Surveyor put his Seal This Lease was adj’d void because the Surv’r put his own Seal & not the Kings whose Attorney he was And without the Kings Seal it was not his Lease Mo. 70. 71
Sr. Thos. Dabridgcourt obtained a Decree in Cane, ag’t Sir Antho. Ashley for 1000^. Sr. Thos. made a Lre of Atto. to his Son to compound the Suit which he did for 200 Marks & made a Rel. to Sr. Antho. in his own Name This Rel. was ruled in Cane, to be void because not made in the name of his Father Mo. 818. And a like Case is there remembred of Leases made by Sr. Francis Walsingham as Atto. of Sr. Philip Sidney in his own Name which were likewise ruled to be void in Cane.
*B274 The Reason, upon which these Cases stand I take to be this That every Authority delegated to another must be strictly pursued. Otherwise it is void 1 Inst. 52. a. 258. a. And as in the Cases cited the Authority given was to make Leases in the Name of the Constituent That Authority was not pursued Which is the very Case here. The Deeds are made in the Name of Buckner the Atto. The Authority given is to sell & the Deeds “ for me and in my name and as my Act to deliver ” So that the Atto. not having pursued his Authority his Act i. e. these Deeds are void (a) But they are also void for another Reason viz.
2. That Bernard the Princ. was dead before the Date of the Deeds And so the Authority w’ch Buckner had as Atto. was determined This is so plain from the Reason of the Thing as well as express Authoritys in Law that it would be mispending Time to say much on the Subject Lit. S. 66. puts a Case of a Feoffment & a Lre of Atto. to make Livery There if the Feoffor dies before Livery it cannot be made afterwards For which he gives this one plain Reason because after his Decease the Right of the Lands is forthwith in his Heir or some other This Case put by Litt. is stronger than that before us for here'is no Deed executed only an Authority given to make a Deed in his Name And therefore I will beg Leave to add to the Reason of Littleton another of my own viz. that it is impossible the Authority should be pursued [256] because the Deed must be made in the Name of the Princ. which cannot be after he is dead I might add further that in this Case the Lands are devised And the Devise taking Effect immediately upon the Death of the Testor was a Countermand in Law of the Authority given to his Attorney in the same Manner as making a 2d Lre of Atto. is ’a Countermand or Revocation of a former Sr. Ed. Coke in his Commentary 52. b. has adopted this Doctrine of Littleton And adds that a Letter of Atto. to make Livery after the Death of the Feoffor is void From whence it follows that it was not in the Power of Bernard to impower Buckner by Lre of Atto. to sell the Land after his Death if he had it in his Intention (which does not appear) tho’ with’t Question he might have given him such Power by his Will I shall then take it for granted that the Deeds from Buckner to Weedon & Shairs are void And that nothing passed to the Grantees And then the
*B275 2. Point in the Case & w’ch concerns the Title of these Defts. only is Whether the Dying seised of Weedon & Shairs the Grantees-in the Life of the Pits. Father will avail anything
The Finding in this Case is so odd that I am forced to guess at the Meaning of it but I suppose it may be insisted that a Descent takes away an Entry Admitting which I answer It is not found there was a Descent from Weedon & Shairs to their Heirs Only that they died seised which they might do & the Land not descend for they might devise it away or a Stranger might enter after their Death & abate And in either Case the Dying seised will signifie nothing for it is the Descent & not the Dying seised which takes away the Entry For illustrating this I must beg Leave to consider a little the Law on this Head In Judgment of Law the worthiest Means of coming to an Estate is by Descent & therefore the Law has annexed to it divers Privileges particularly this we are now speaking of that a Descent shall take away an Entry The Meaning of which is that where a pson comes to an Estate by Descent There tho’ another has a good Title he shall not be allowed to enter upon the Pleir who is in by Descent but shall be put to his Action to recover (Lit. S. 385.) that is a Real Action for I shall agree if our Entry is taken away We cannot maintain an Ejectm’t But here it is only found that the Grantees of Buckner died seised Not that there was any Descent And as one might well be with out the other I conceive this Dying seised avails nothing at all it does not take away the Pits. Entry
But there is still another Obj. viz. that it does not appear when these Grantees died seised Only that it was in the [257] Lifetime of the Pits. Father Now he was an Infant when his Father died in 1691. & continued so for many Years dying a young Man tho’ 18 Years after his Fathers Death And if the Pits. Fa’r was an Infant at the Time of the Descent (admitting there really was a Descent in the Case) such Descent would not take away our Entry For the Law ever careful of the Rights of Infants will not suffer that they shall be prejudiced by any Thing that happens during their Nonage In all our Acts of Limitation there is a Saving to the Rights of Infants And so in all Cases at the Common Law where Time or any Act in Law will take away a Right there is an Exception to the Case of Infancy as in this of a Descent taking away an Entry & many others Lift. S. 402. Now as the Pits. Father might be & probably was an *B276 Infant when this pretended Descent happened It signifies nothing at all If the Defts. will say he was not under Age I answer it was incumbent upon them to have that found in the Verd’t According to a late Resolution in this Court between Ivey & Fitzgerald upon an App’l from Nansemond It was in Apr. 1736. (ante 176) The Case was in Ejectm t upon a special Verdict where in a Descent was found Which I insisted took away the Pits. Entry But J. R. argued that we could have no Advantage from that unless it appeared that the Pit. was under no Incapacity at the Time of the Descent And that it was incumbent upon the Deft, to shew it if he would take Advantage of such Descent Of which Opinion the Court was & Judgm’t given accordingly And this being a parrallel Case I hope the Court wil be of the same Opinion
I am now come to the 3. & last Point & which is the great Question of the Case Wheth’r there has been such a Possion in any of the Defts. as will give them a Title or bar the Pit. of his Entry.
The Possion of the Defts. Dishman & Weedon has been under the Deeds I have been speaking of But as to the other Defts. The Parish & the Browns It does not at all appear how they first came into Possion They show no kind of Title either by Grant from the Crown or any of the Pits. Ancestors • Or that the Land in Controversy is within the Bounds of any such Grant But all the Title they have to rely upon is barely Possion In speaking therefore to this Point it may be necessary to shew 1. That such a Possion as this in Controversies about Bounds has not been usually favoured in this Court Or 2. If it has That we are not barr’d in this Case by the Act of Limitation and consequently that no Possion tho’ ever so long can avail the Defts. But first I must beg Leave to state the Pacts relating to this Question
I shall admit the Possion of the Defts. to be the strongest the Witnesses speak of viz. 50 Years tho’ they say between 40 & 50. I must observe that so long as 1673. the Pits Grandfa’r comenced a Suit ag’t one Horton Under whom the Parish claims for settling the Bounds of the Land now in Contest This Suit by the artifices of Horton [258] was protracted till the Year 1686. when it was dismissed without any Judgm’t because it had been so long depending This Period falls in very near with the Time the Witnesses say the Defts. have been in Possion *B277 A few Years after this in 1690 or 1691 our Grandfa’r died having devised to his 2 Sons Philip & Jn’o both Infants John had the whole by Survivorship & died a young Man in 1709. leaving the Pit. an Infant who brought this Suit before he was 25 Years old ab’t 8 years ago I think And in this Suit the Defts. have used all the Chicanery & little Arts they could devise to delay it
Under this View of long Suits protracted by the Arts of the Defts. And the Infancy of the Pits. Father & himself This Title the Defts. would build upon Possession must appear to be very indifferently founded Since every Possion that can give a Right must be peaceable & uninterrupted And there must be no Incapacity in the Party who has a Right to claim or enter
But as to this Point of Possion with Respect to Bounds I never understood in all the Determinations I have beard in this Court Any other Regard was paid to it than as it was a presumptive Evidence of Right in Cases where perhaps there was no other certain Rule of Determination For Instance in the Case of Lands adjoining to each other claimed under different Patents It is a known Thing that in most of the old Pats, the Bounds are described with so much Incertainty and often Contradiction that it is next to impossible to determine from thence what the true Bounds are or ought to be And therefore as the best Guide & Rule in such dark & perplexed Controversies the Court have generally settled the Bounds according to the ancient Possion where it has appeared to be peaceable & uninterrupted But where the Bounds of a Pat. are certain & evident & any pson has encroached within those Bounds without any kind of Title I believe no Instance can be given of a Determination in this Court that a Possion of this kind without more should give a Title Much less where there have been continual Controversies & Disputes or Incapacities in those who had the true Right & Title as app’rs to be the Case here Indeed it would be utterly inconsistent with the Spirit of our Law to determine that Possion should give a Right where there are Incapacitys in the Persons that should claim I have had Occasion already to observe the great Care both the Statute & Common Law have always taken of Infants Rights And it is the same with Respect to other In-capacities Nothing that happens during the Incapacity can possibly hurt them And I will beg Leave to add that in natural Justice there is no Reason why the longest Possessions hould give a Right Since in the [259] Nature of Things a Wrong be *B278 comes only the more aggravated the longer it has continued. Institutions of this kind may be convenient for Society and without Doubt are so. But then they ought to be confined to the positive Law & carried no further And I humbly conceive there is no positive Law in this Case No Act of Limitation that will barr the Pit. of his Entry or Action as I shall now endeavour to shew
In speaking to this Point it may be necessary just to remember the sev’l Acts that have been made in this Country that can any way respect the present Question In 1662 An Act was made Intitled Lands 5 Years in Possion (cap. 72) By this Act if a Man having Right to Lands did not prosecute his claim within 5 Years he was forever barred With a Saving however to Infancy & other Incapacitys This was certainly a very severe Law but yet it subsisted above 40 years till 1705 when an Act was made repealing it & much to the Purport as to the Matter of Limitation with that we now have But there being some Things in this Act not approved of by the King It was repealed by Proel, as I have been told And is also repealed in express Words by the Act of 1710. the only Act we now have as to this Matter [sic] And supposing the Act of 1662 to be revived by the Repeal of the Act of 1705. It is again repealed by the gen’l repealing Clause in the Act of 1710.
This Act of 1710 then is the only Law now in Force respecting the present Question for I presume it will not be pretended that this Court can judge upon any Act that is repealed From whence it will follow that the Possion of the Defts. before 1710. is quite out of the Question And if the Pit. has pursued his Right within the Time limited by this Act No Possion tho’ ever so long can bar him
The Words of the Act so far as respects the present Question are “ That no Person or p.sons that now hath or have or which “ hereafter may have any Right or Title of Entry into any Lands “ &c. shall at any Time hereafter make any Entry but within “ 20 Years next after his or their Right or Title hath heretofore “ descended or accrued or hereafter shall descend or accrue “ Provided that if any P.son or P.sons that hath or shall have “ such Right or Title of Entry be or shall be at the Time of such “ Right or Title first descended accrued come or fallen within “ the Age of 21 years Feme covert Non compos Imprisoned or “ out of the Colony Such Pson may make his Entry within ten “ Years after the Incapacity removed.”
*B279 It is plain that the Makers of this Act had under their Cons. 2 Things viz. to provide for those Rights & Titles that had accrued before the Act And for such as sho’d accrue afterwards As to the first P.sons having such Rights are to make their Entry &c. within 20 Years from the Time their Right first accrued But if they were under Age or other Disability at the Making of the Act [260] By the Proviso ten Years is given them after the Disability removed to make such Entry The Words of the Act are so extreamly plain they will admit of no Comment
Now in this Case the Lessor of the Pit. had a Right of Entry at the Time this Act was made Which accrued to him upon the Death of his Father By the Enacting Part which has been read he was to make his Entry within 20 Years from the Death of his Father w’ch happen’d in 1709. But this he has not done But then being an Infant when the Act was made he has by the Proviso ten Years after his coming of Age And this Suit was brought before he was 25. And so he is within the Time limited by the Proviso Thus having made our Entry within the Time limited by the Act of 1710 And there being no other Act in Force whereby the longest Possession can bar us I apprehend it to be extreamly clear that the Lessor of the Pit. is not barr’d by the possession of the Defts. in this Case And as t is clear that we are not barr’d by the Act of Limitation So I hope that the Possion relied on by the Parish & the Defts. the Browns which is all the Title they have will avail nothing under the Circumstances of this Case And that the Defts. Dishman & Weedon have no Title under the Deeds from Buckner And then Judgm’t I presume will be given for the Pit. for all the Land within the black Lines determined by the Jury to be the true Bounds of his Patent and I humbly pray Judgment accordingly —
There was no Argument made as to the Title of Dishman & Weedon Nor any worth noting as to the other Points So Judgm’t was given for the Pit. for all the Lands within the black Lines Apr. 1738

 Bao. Abr. 204. 3 Bal. Abr. 403.